BANK OF BOSTON CONNECTICUT *v.* DENISE PISCATELLI
ET AL.

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE No. 100229
WATERBURY

Memorandum filed February 27, 1991

*Sorokin, Sorokin, Gross, Hyde & Williams,* for the plaintiff.

*Howard, Kohn, Sprague & Fitzgerald* and *Joseph, Pilicy & Harting* and *Tinley, Nastri & Renehan,* for the named defendant.

*Rinaldi, Zipoli & Bruno,* for the defendant Brian Tynan.

*Murphy, Laudati & Kiel,* for the defendant Richard C. Tynan.

*Brian P. Borghesi,* for the defendant William F. Tynan.

BLUE, J. This fraudulent transfer case presents an important question concerning the scope of the automatic stay provision of the federal Bankruptcy Code, 11 U.S.C. § 362. The plaintiff bank alleges that on September 16, 1988, Mary Tynan became one of a number of guarantors to the plaintiff bank of a debt, the unpaid balance of which exceeds four million dollars. The plaintiff alleges further that on November 27, 1989, Mary Tynan quitclaimed property at 35 Fairview Avenue in Wolcott to Richard, William and Brian Tynan,

reserving to herself a life interest. This transfer allegedly rendered Mary Tynan insolvent and was made with the intent to hinder, to delay, and to defraud her creditors. Richard, William and Brian Tynan are named as defendants; Mary Tynan is not. A number of other defendants, not involved in the present case, are also named. The plaintiff seeks money damages against each defendant and an order setting aside the conveyance in question.

On January 10, 1991, Brian Tynan filed a motion for a stay of proceedings. In his motion he asserts that on December 14, 1990, an involuntary petition in bankruptcy under chapter 7 of the Bankruptcy Act was filed against Mary Tynan. The plaintiff does not dispute this. Apparently, no trustee has yet been appointed. Brian Tynan seeks an automatic stay of the proceedings against him pursuant to 11 U.S.C. § 362 (a) (5).

Under 11 U.S.C. § 362 (a), a petition in bankruptcy "operates as a stay, applicable to all parties," of, inter alia, the following types of actions: "(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; [and] (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title."

The automatic stay provision "is a key component of federal bankruptcy law." *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1146 (5th Cir. 1987). "The basic

ideal behind a . . . chapter 7 bankruptcy case is the marshalling of assets and their pro-rata distribution to creditors." *In re MortgageAmerica Corporation,* 714 F.2d 1266, 1273 (5th Cir. 1983); see *Young* v. *Higbee Co.,* 324 U.S. 204, 210, 65 S. Ct. 594, 89 L. Ed. 890 (1945). The automatic stay provision is vital to this process. As the legislative history of § 362 (a) explains: "Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that." H.R. Rep. No. 595, 95th Cong., 2d Sess. 340, reprinted in 1978 U.S. Code Cong. & Admin. News 6297.

The automatic stay provision of § 362 is not ordinarily available for the benefit of nonbankrupt codefendants because such an extension of the stay does not ordinarily promote its underlying purpose, i.e., the protection of debtors and creditors. See *Matter of S.I. Acquisition, Inc.,* supra, 1147, and authorities cited therein. In certain limited situations, however, courts have recognized that a § 362 stay "may apply to actions against nonbankrupt defendants." Id. One of these situations is an action alleging a fraudulent conveyance of property in an effort to put that property out of the reach of creditors.

The theory of a fraudulent conveyance action is that "[p]roperty fraudulently conveyed may, as to the creditors of the grantor, be treated as if no conveyance of it had been made . . . . True, the fraudulent grantor could not invoke the power of the courts to secure a reconveyance to him because his own fraud has shut the door of the courts against him . . . . Neverthe-

less, he still has an interest in the property which can be reached by his creditors." (Citations omitted.) *Murphy* v. *Dantowitz,* 142 Conn. 320, 325–26, 114 A.2d 194 (1955); accord *Olin Corporation* v. *Castells,* 180 Conn. 49, 52, 428 A.2d 319 (1980). Given this fact, the Fifth Circuit Court of Appeals has reasoned that, "when such a debtor is forced into bankruptcy, it makes the most sense to consider the debtor as continuing to have a 'legal or equitable [interest]' in the property fraudulently transferred within the meaning of section 54 (a) (1) of the Bankruptcy Code." *In re MortgageAmerica Corporation,* supra, 1275. The Fifth Circuit concludes that this property, even in the hands of a third party, is property of the estate for purposes of § 362 (a) (3). Id., 1277; accord *Matter of Sherk,* 918 F.2d 1170, 1175–76 (5th Cir. 1990); *Matter of S.I. Acquisition, Inc.,* supra, 1149–50.

The Bankruptcy Court for the Northern District of Florida has recently arrived at the same result by a somewhat different approach in *In re Saunders,* 101 Bankr. 303 (Bankr. N.D. Fla. 1989). *Saunders* points out that the separate power of a bankruptcy trustee to recover fraudulently transferred property for the benefit of the estate reflects a "congressional interest that such property is not to be considered property of the estate until it is recovered." Id., 305. On the other hand, *Saunders* notes, § 362 (a) (1) applies on its face to actions " 'to recover a claim against the debtor.' " Id. *Saunders* explains that, "[w]hile a fraudulent transfer action may be an action against a third party, it is also an action 'to recover a claim against the debtor.' Absent a claim against the debtor, there is no independent basis for the action against the transferee." Id. The legislative history confirms that § 362 (a) (1) "is designed to prevent the issuance of a writ of execution by a judgment creditor of the debtor to obtain prop-

erty that was property of the debtor before the case, but that was transferred, subject to the judgment lien, before the case." H.R. Rep. No. 595, 95th Cong., 2d Sess. 340, reprinted in 1978 U.S. Code Cong. & Admin. News 6297. This court finds the reasoning of *Saunders* persuasive on this point. For this reason, it is unnecessary to consider the applicability of § 362 (a) (5) relied upon by Brian Tynan. In any event, regardless of the particular subsection relied upon, an automatic stay will help ensure "one of the primary goals of the bankruptcy process—a ratable distribution of the bankruptcy estate—by protecting creditors from each other." *Matter of U.S. Marketing Concepts, Inc.,* 113 Bankr. 487, 490 (Bankr. N.D. Ind. 1990).

The cases discussed above, notably *MortgageAmerica* and *Saunders,* have involved stays sought by bankruptcy trustees. The stay here is sought by a defendant. This difference should not, however, be dispositive. A bankruptcy trustee has standing to bring a number of bankruptcy related claims that may not be brought by the universe of debtors and creditors. See the particularly thorough discussion in *St. Paul Fire & Marine Ins. Co.* v. *Pepsico, Inc.,* 884 F.2d 688 (2d Cir. 1989). A stay under § 362, however, is supposed to be *automatic.* It is effective upon the date of the filing of the petition and need not, in theory, be requested by anyone. See 2 W. Collier, Bankruptcy (15th Ed. King 1989) § 362.03. Given this situation, it would be inappropriate for a court to be deterred from ordering an otherwise appropriate stay by problems of standing.

The plaintiff contends in its memorandum in opposition to Brian Tynan's motion that, "[i]f and when the plaintiff here succeeds, the property which is the subject of this action will be returned to the debtor's estate for the benefit of all creditors." That is not, however, necessarily the case. Mary Tynan, the debtor here, is

not even a party to the action, and, under these circumstances, it is most unlikely that the plaintiff would, in the event that it prevailed on the merits, seek the precise remedy just described. A literal return of the property to the debtor's estate would put that property beyond the reach of the plaintiff for purposes of this action. It is much more likely that a creditor in this situation would seek to attach or to levy execution on the property as if no conveyance had been made. *Murphy* v. *Dantowitz*, supra, 328; see *Olin Corporation* v. *Castells*, supra, 52. The plaintiff, it will be recalled, seeks money damages against each of the defendants in addition to an order setting aside the conveyance.

This is, of course, necessarily speculative since no liability has been found in the first place, but an automatic stay will serve to prevent any possibility of this occurrence. It must be emphasized, moreover, that a stay is compelled by the theory and language of the statute. A stay of the action upon a filing of the bankruptcy petition is mandatory and automatic. If a stay is mandated, as the cases hold, when requested by a bankruptcy trustee, it is equally mandated when requested by a defendant or, for that matter, no one at all. The statute simply does not differentiate between those situations.

In the aftermath of the filing of a bankruptcy petition, any action to set aside a fraudulent transfer "must be brought in the name of the bankruptcy estate as the real party in interest." *In re Curry & Sorensen, Inc.,* 57 Bankr. 824, 828–29 (Bankr. 9th Cir. 1986); accord *Matter of Sherk,* supra, 1175. This result will further "the basic, common sense principle of pro-rata distribution that runs through virtually every substantive provision of the Code." *In re MortgageAmerica Corporation,* supra, 1278.

For the reasons discussed above, the action is stayed as to Brian Tynan. The automatic stay provision similarly mandates that the action be stayed as to Richard and William Tynan. It is not stayed with respect to any other defendant.